**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| **MICHAEL HAMM,** individually and on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| | **Jury Trial Demanded** |
| **SHARP ELECTRONICS CORPORATION,** | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Michael Hamm ("Plaintiff"), by and through undersigned counsel, on behalf of himself and all others similarly situated, brings this Class Action Complaint against Sharp Electronics Corporation ("Defendant" or "Sharp") and in support alleges, upon information and belief and based on the investigation to date of counsel, as follows:

## NATURE OF ACTION

1.      Sharp is one of the largest technology companies in the world. It designs, manufactures and sells a variety of technological products, including kitchen appliances such as microwaves.

2.      Sharp's kitchen appliance portfolio includes multiple different types of microwaves, including microwave drawers (the "Microwaves" or the "Products"), which are the subject of this action. On its website, Sharp boasts that it "has been innovating microwave cooking for decades and holds 11 patents on the Microwave Drawer platform alone. Engineered for consistency and built with the finest quality materials, great cooks trust the Microwave Drawer to deliver great

results every time."[1] Over the course of several decades, Sharp has gained the trust of consumers, who reasonably believe that Sharp products are made with quality materials, and that the Sharp products can be used safely, as intended.

3.      Microwave drawers, as described by Sharp, "offer[] flexible placement options so you can focus on the design elements you prefer by maximizing sight-lines and enabling more design versatility than typical built-in, over-the-range or countertop microwaves."[2]

4.      Sharp's microwave drawers are intended by Sharp to be installed within cabinets, under countertops, or adjacent to wall ovens.[3]

5.      Sharp has offered six models for its microwave drawers, and currently offers five of those six: SMD2470AH, SMD2470AS, SMD3070AS, SMD2480CS, KB6524PS, and KB6525PS (collectively, the "Microwaves"). The Microwaves, and the defect in the Microwaves alleged herein, are substantially similar and each model is the subject of this class action lawsuit.

6.      Each Microwave is similarly defectively designed and/or manufactured.

7.      The Microwaves all contain a defect, described in detail *infra*, that makes them unreasonably dangerous, as they are susceptible to catching fire, and unsuitable for their intended use. More specifically, the  Microwaves are defectively designed and/or manufactured such that, under normal and intended use, the electromagnetic waves generated by the magnetron tube are unable to properly move through the waveguide into the cooking cavity, resulting in buzzing, smoking, overheating, and eventual destruction of the magnetron, leading to scorching of the waveguide (the "Defect").

8.      Accordingly, the Microwaves are unreasonably dangerous and not fit for household use.

---

[1] http://www.sharpusa.com/ForHome/HomeAppliances/Microwaves/MicrowaveDrawer.aspx (last accessed Mar. 12, 2019).

[2] http://www.sharpusa.com/ForHome/HomeAppliances/Microwaves/MicrowaveDrawerDark.aspx (last accessed Mar. 12, 2019).

[3] http://files.sharpusa.com/Downloads/ForHome/HomeAppliances/MicrowaveOvens/BuildersGuides/2017-Builders%20Guide_3-20-17.pdf (last accessed Mar. 12, 2019).

9.     The Defect exists at (and prior to) the point of sale, as the Microwaves are defectively designed and/or manufactured. The damage to the Microwaves, resulting from the Defect, is  not a result of misuse of any kind, such as overcooking or prolonged heating by the owner. It can take less than 30 seconds for the magnetron tube to overheat, scorch the back panel of the Microwaves, produce smoke, and fail altogether.

10.     Sharp has undertaken a deliberate and willful pattern of  conduct (including taking active measures) aimed at concealing the Microwave Defect from its  consumers, including the Plaintiff.

11.     At all relevant times, Sharp knew or should have known about the Defect but nevertheless marketed, advertised, and sold the Microwaves without warning consumers that the Microwaves are likely to overheat and could result in buzzing, overheating of the magnetron, scorching of the waveguide, smoking, and ultimate failure.   Despite this knowledge, Sharp failed to disclose and actively concealed the Defect from Class Members and the public, and continued to markete, advertise, distribute and sell the Microwaves to consumers.

12.     Sharp has failed to provide an aduate fix for the Defect.  Indeed, rather than providing consumers with new, non-defective Microwaves after their Microwaves overheated, Sharp either replaced each defective Microwave with another defective Microwave, improperly denied the warranty claim, and/or *forced the consumer to sign a waiver or buy an extended warranty as a remedy*. Sharp failed to disclose the known Defect or provide the customer with a non-defective replacement product.

13.     As Sharp has been unable to, or has otherwise failed or refused to supply non-defective Microwaves to replace the defective Microwaves, the replacement Microwaves likewise contain the Defect and also fail, or are likely to fail in the same manner, leaving consumers fearful of additional smoke and fire caused by the Microwaves, and to contend with Microwaves that do not function as intended

14.     As a direct and proximate result of Sharp's concealment of the Defect, its failure to warn customers about the Defect before their purchase of the Microwaves, its inability or refusal to

replace the defective Microwaves with non-defective Microwaves, and its failure to recall the Product or remedy the Defect, Plaintiff and other similarly situated customers ("Class" or "Class Members") purchased and used Sharp's defective Microwaves when they otherwise would not have made such purchases or would not have paid as much for the defective Microwaves.

15.     Plaintiff's and putative Class Members' Microwaves have failed (or are likely to fail) as a result of the Defect when Plaintiff and Class Members use the Products as intended, resulting in damage to the Microwaves and other property, including smoke damage to cabinetry, kitchen islands and peninsulas, and other interior parts of their homes, and the loss of meals prepared in the Microwaves.

16.     Plaintiff and all putative Class Members' Microwaves contain the same Defect at the point of sale, pose substantially the same safety risk to Plaintiff, Class Members, consumers, and the public. Sharp's Microwaves cannot be used safely for their intended purpose of preparing meals at home.

17.     The price of the Microwaves is between approximately $1,000.00 and $1,700.00.

18.     This action is brought to remedy Sharp's unlawful conduct in connection with the design, manufacture, marketing, advertising, selling, warranting and servicing of the Microwaves.

## **PARTIES**

19.     Plaintiff Hamm is a resident and citizen of Clermont, Lake County, Florida.

20.     Defendant Sharp Electronics Corporation is a New York corporation with its principal place of business located in Montvale, New Jersey.  Defendant maintains a Florida registered agent, whose office is located at: 1200 South Pine Island Road, Plantation, Florida.

21.     Sharp distributes and markets, and directs the marketing of the Microwaves in Florida, and throughout the United States.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named or unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiff and Defendant are citizens of different States. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

23.     This Court may exercise personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sales of products in this District, and has engaged in the unlawful practices described in this Complaint in this District.

24.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

25.     Microwave ovens have been ubiquitous in American kitchens for several decades. Consumers have become accustomed to the simplicity and quick cooking that microwave ovens provide, and rely upon manufacturers, including Sharp, to ensure their safe and efficient use.

26.     Sharp is a household name, and one in which consumers have relied upon for the safety and quality of microwave ovens for more than 40 years. Sharp introduced the first microwave oven with a turntable in the 1960s, and in the late 1970s, Sharp introduced low-cost microwave ovens for residential use.[4]

27.     Upon information and belief, Sharp was the first to design, patent, and manufacture microwave drawers. In fact, Sharp owns the trademark for the term "Microwave Drawer."[5]

---

[4] http://www.sharpusa.com/AboutSharp/CompanyProfile/SharpAndTechnologyHistory.aspx (last accessed Mar. 12, 2019)

[5] http://www.sharpusa.com/ForHome/HomeAppliances/Microwaves/MicrowaveDrawer.aspx (last accessed Mar. 12, 2019).

28.     Sharp is engaged in the business of designing, manufacturing, warranting, marketing, advertising, distributing, and selling the Microwaves. Each of the Microwaves is branded with the "Sharp" logo or, upon information and belief, can be readily identified as being a Sharp designed, manufactured, and distributed product.

29.     The Microwaves are used, and are intended by Sharp to be used, for safe food preparation.

30.     Microwaves are high voltage appliances that are a considerable electrical hazard if they are defectively designed or manufactured.

31.     Each Microwave contains a magnetron, which is powered by a high voltage transformer, generating the electromagnetic energy waves ("electromagnetic energy" or "waves") in the Microwaves. The magnetron is a vacuum tube device that generates the energy needed to heat food within the microwave. In other words, when a consumer cooks food in a microwave oven, the magnetron takes electricity from the power outlet and converts it into high-powered radio waves that are transmitted down a waveguide.

32.     The waveguide directs the radio waves generated by the magnetron from one end of the waveguide to the other end and into the cooking cavity. The waves enter the cooking cavity and are directed and distributed throughout the cooking cavity by a mode stirrer. The intended purpose of the mode stirrer is to ensure the waves are distributed throughout the cooking cavity so that the food is evenly cooked. A mode stirrer is utilized in microwaves that do not have a carousel to move the waves throughout the food.

33.     Each of the Sharp-branded Microwaves contains a Defect that prevents the waves from properly moving through the waveguide into the cooking cavity. More specifically, the electromagnetic energy that originates from the magnetron tube becomes obstructed or disturbed while moving through the waveguide due to improper dimensions and configurations of the Microwave's internal components.  This obstruction or disturbance prevents a substantial portion of the energy from being properly guided into the cooking cavity.

34.     The obstruction or disturbance in the electromagnetic energy's movement down the waveguide causes the energy that is not transmitted to the cooking cavity to arc and otherwise concentrate near the magnetron, burning the waveguide and causing the magnetron tube to overheat. As a result of the overheating, the magnetron tube anode terminal (the top of the magnetron tube) melts and the waveguide is scorched.

35.     Expert investigation has revealed evidence of a localized hot spot on the waveguide, which was observed several inches from the magnetron during normal operation.

36.     The hot spot is consistent with a faulty design by Sharp, in which the magnetron, the waveguide, and its load (the food) are not properly matched to one another in size and/or ratio, resulting in premature failure of the magnetron tube.

37.     Customers' experience and technicians' reports, including burn patterns in the Microwaves, are consistent with premature failure of the magnetron and an increased Voltage Standing Wave Ratio ("VSWR").

38.     Waveguide problems, such as localized energy disturbances, are consistent with an increased VSWR. The manufacturer's data sheets for magnetron tubes indicate that an increase in the VSWR reduces magnetron life.

39.     Further, the Microwaves are designed and marketed as having 950-1000 watts heating capacity; however, due to the obstruction or disturbance in the transmission of the energy to the cooking cavity, the Microwaves operate at a maximum of only 750 watts.

40.     The Microwaves also lack an appropriate safety mechanism to prevent the components from overheating, and causing smoke, burning, and premature failure.

41.     While microwave drawers have only been on the market for approximately 20 years, successful alternative designs for the manufacture of microwaves that utilize magnetron/waveguide/mode stirrer technology have existed since the 1970s, including but not limited to those utilized in microwaves manufactured and sold by Amana.

42.     Sharp expressly and impliedly warranted, via user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Microwaves are fit for the ordinary purpose for which such goods are sold.

43.     Sharp expressly warrants in its user manuals that the Microwaves are free from defects in workmanship and materials.

44.     Sharp's Warranty further provides:

> One (1) year parts and labor including in-home service. The warranty period continues for an additional four (4) years, for a total of five (5) years, with respect to the magnetron tube in the Product for parts only; labor and service are not provided free of charge for this additional period.

45.     However, the Warranty fails of its essential purpose for the following reasons:

(a)     Sharp consistently fails to investigate whether there is a failure of the magnetron implicating the five (5) year warranty, and instead denies warranty claims as being outside of the one (1) year warranty;

(b)     Microwaves that are replaced under the terms of the Warranty are also replaced with defective Microwaves;

(c)     Sharp often attempts to force consumers into purchasing an extended Warranty or prorated replacement Microwave when the defect manifests outside the one (1) year Warranty, without regard to whether the magnetron has failed within the five (5) year Warranty; and

(d)     Sharp attempts to force consumers into signing releases and waivers without acknowledging their right to consult independent counsel before signing.

46.     Sharp also warrants that the Microwave "when shipped in its original container, will be free from defective workmanship and materials, and agrees that it will, at its option, either repair the defect or replace the defective Product or part thereof with a new or remanufactured equivalent at no charge to the purchaser for parts or labor for the period(s) set forth…"The Microwaves were not free from defects in workmanship and materials at they time they were "shipped," in breach of Sharp's express warranty.  As described herein, Sharp breached this warranty at the time it shipped the Microwaves (and at the point of sale to consumers) because, the Microwaves were defective

when they came off of the assembly line. Thus, at the time the defective Microwaves were shipped and sold to consumers, Sharp was in violation of the express warranty.

47.     Further, because Sharp does not have non-defective Microwaves available to replae the defective Microwaves, and because its repairs are simply a band-aid that do not resolve the Defect, it is unable to fulfill its warranty obligations at the point of purchase, or anytime thereafter, and the warranty is therefore breached immediately upon purchase.

48.     In addition, the Warranty is unconscionable in its time limitations, disclaimer of warranties, and limitation of remedies.  The Warranty is further unconscionable given Sharp's knowledge of the Defect, the existence of the Defect at the point of sale, Sharp's failure to disclose the Defect at the time of sale and during warranty communications, and resulting premature failure of the Microwaves..

49.     The Defect renders the Microwaves unfit for the ordinary purpose for which they are used, which is to heat food at up to 950-1000 watts.

50.     As a result of the Defect, the Microwaves pose an unreasonable risk of harm to consumers and their property.

51.     Had Plaintiff, Class Members, and the consuming public known that the Microwaves were defective, posed an unreasonable risk of harm to themselves and their property, and would cause damage, they would not have purchased the Microwaves.

52.     In sum, Sharp has actively concealed the existence and nature of the Defect from Class Members, despite its knowledge of the existence and pervasiveness of the Defect, and certainly well before Plaintiff and Class members purchased the Microwaves and during warranty communications.  Specifically, Sharp has:

a.     Failed to disclose the Defect to consumers, at or after the time of purchase, including when consumers mae warranty claims or otherwise complain to Sharp about the Defect;

b.    Actively concealed the Defect from Consumers, at or after the time of purchase, including when consumers make warranty claims, or otherwise complaint ot Sharp about the Defect;

c.    Failed to disclose, and actively concealed the Defect from consumers, including that the Microwaves were not fit for their intended purpose;

d.    Failed to disclose and actively concealed the Defect from consumers when it attempted to force consumers complaining about the Defect to sign unlawful waivers of their legal rights;

e.    Failed to disclose and actively concealed the Defect from consumers when it attempted to force consumers complaining about the Defect to purchase extended warranties;

f.    Failed to disclose and actively concealed the Defect from consumers when it improperly and unlawfully denied valid warranty claims;

g.    Failed to disclose and actively concealed the Defect from consumers when it provided them with replacement Microwaves that contained the same or similar safety Defect.

53.    As a direct, proximate, and foreseeable result of the defect, Plaintiff and Class Members suffered damages, including but not limited to: (a) the difference in value of the Microwaves as purchased and the Microwaves received; (b) loss of use of the Microwaves; (c) property damage; (c) actual damage; and (d) consequential damage.

## **PLAINTIFF'S FACTS**

54.    Plaintiff and his wife purchased a home in 2015 and performed a total kitch remodel. On October 22, 2015, Plaintiff purchased a Sharp-branded Microwave Oven Drawer, Model Number SMD2470AS from Southwest Steal Appliance Warehouse in Orlando, Florida for $1,190.00.   Shortly thereafter, Plaintiff had the Microwave installed in custom cabinetry built specifically for installation of the Microwave.

55.     Plaintiff purchased the Microwave after performing research and viewing models of the Microwaves.  Specifically, Plaintiff purchased based, in part, on Sharp's representations that the Microwaves were of high quality. Plaintiff's purchase was also based on the unirque drawer feature that would be installed in custom cabinetry and free up counterspace.

56.     Based on brand name and the price of the Microwave, Plaintiff believed the warranty would be longer than just one year and expected Sharp would repair or replaced the Microwave if it failed.

57.     From the time of installation until the incident described below, Plaintiff used the Microwave as intended, cleaning it appropriately, and maintaining it in a reasonable manner.

58.     On or around May of 2019, Plaintiff was heating popcorn when the Microwave made an odd noise and began to emit an electrical smelling smoke, consistent with the Defect. As Plaintiff believed that the Microwave posed a fire and safety risk, he stopped using it.  Also, as the strong electrical smoke had filled the cooking cavity and contaminated his food, Plaintiff was forced to dispose of the popcorn.

59.     Shortly thereafter, Plaintiff notified Sharp of the problem. He was given a case number, and a Sharp authorized technician was sent to inspect the Microwave.  Plaintiff was required to pay a $95.00 fee for the technician's visit. Upon inspection, the technician stated that the "Magtube has burned through microwave cavity" and the Microwave was unrepairable.

60.     Despite the fact that the magnetron tube had failed within its five-year Warranty, Sharp denied Plaintiff's warranty claim as being outside the one-year Warranty.

61.     As Plaintiff's cabinetry was custom built for the Microwave drawer, Plaintiff had no choice but to purchase a new Microwave of the same model for approximately the same amount. As Plaintiff feared the new Microwave might also fail after the one-year Warranty, he purchased an extended five-year warranty for approximately $100.00.  Upone information and belief, the replacement Microwave is defective.

62.     Despite the premature failure of the magnetron tube prior to the expiration of its five year warranty, Sharp informed Plaintiff that because the Microwave was outside of the one (1) year

warranty, no repair or replacement would be offered. This was a breach of the express warranty.

63.    Further, as Sharp had exlusive knowledge of the Defect, which existed at the point of sale, Sharp was in violation of the express warranty at the time Plaintiff purchased the Microwave.

64.    Because  Sharp fraudulently concealed the Defect from him before his purchase as well as after the Microwave was installed in his home and being used, Plaintiff did not suspect (and had no reason to suspect) that there was anything wrong with his Microwave until the the aforementioned incident in or around May of 2019.

65.    Since May of 2019, Plaintiff has not used his Microwave as it smells like it is burning when turned on and poses a clear risk of fire, and consequently to the safety of his home and his family.  Rather, Plaintiff was forced to purchase a new Sharp Microwave with an extended Warranty, which is also defective.  Consequently, because Sharp has improperly denied warranty coverage for his defective Microwave, Plaintiff incurred the additional cost of the new Microwave an the extended Warranty.

66.    Plaintiff's Microwave did not operate safely for its life expectancy. Had Plaintiff known of the Defect, he would have either not purchased the Microwave, or would have paid substantially less than he did for the Microwave. Therefore, he did not receive the benefit of his bargain.

## SHARP'S ACTUAL OR
## CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

67.    Sharp knew or should have known when it sold the Microwaves to the public, and during warranty communications, that the Microwaves suffered from the Defect, and that the Defect caused the Microwaves to function improperly during their expected useful life, represented an unreasonable risk that the Microwaves would overheat and cause a severe safety-hazard, which might result in significant personal injury and/or property damage to consumers and the public.

68.    Sharp's knowledge of these facts is established through consumer complaints, including several years of public Internet posts complaining that the Microwaves failed during normal use, and warranty claims.  The number of complaints, and consistency of their descriptions,

either alerted or should have alerted Sharp the serous Defect affecting the Microwaves.  Indeed, upon information and belief, Sharp has a designated complaint center for complaints specifically related to the Defect.  Further, Sharp has created a program wherein, upon receiveing a consumer complaint for a defective Microwave, it seeks to convince consumers to sign unlawful releases and waivers of their rights in exchange for a similarly defective Microwave – a defect which it continues to fail to disclose to consumers.  Sharp does not inform consumers of their right to seek legal counsel before attempting to convince consumers to sign away their legal rights through the release.

69.     Sharp's actual knowledge of the defect is further evidenced by its responses to consumer complaints submitted to https://www.saferproducts.gov, cited *infra*, wherein Sharp continues to attempt to discredit reports of the defect in the Microwaves.

70.     Sharp's response to numerous customer complaints demonstrate that not only is Sharp aware of the dangerous and potentially harmful defect, it attempts to actively conceal the dangerous defect from consumers.

71.     Customer complaints available online regarding the Microwaves date back to at least 2015.  For example, in March of 2015, one consumer reported a problem with Model KB6524PS:[6]

> We were using the microwave to make popcorn. The bag had been the microwave maybe 30 seconds and a horrible noise come from the microwave -- a little smoke starts to come out. Thought it was the popcorn -- but bag was completely flat with no burn marks. Took the popcorn out and turned on the microwave with nothing in it -- terrible noise again and smoke came pouring out from under the control panel....stop microwave after only a few seconds...grabbed fire extinguisher. If I had not been in the room there would have been a fire.

72.     Another consumer reported having the same problem with the same model in August of 2016:[7]

> I want Sharp to acknowledge and provide support for all consumers claiming any sparks, melting or smoke with these microwaves- apparently this is frequent and needs to be addressed in order to prevent death or harm

---

[6] https://www.saferproducts.gov/ViewIncident/1470348 (last accessed June 26, 2019).

[7] https://www.saferproducts.gov/ViewIncident/1581834 (last accessed Dec. 27, 2018).

to children and adults. I would also like a full reimbursement to re-purchase a microwave that is not a fire-hazard for my family, a new replacement of the existing microwave, or a different microwave that will not pose any safety risks to my children and will fit in the kitchen cabinet built specifically for this model. Sharp needs to be held accountable and stand up for their name and products. They should not wait for a fatality or lawsuit to stop them from concealing consumers complaints of a safety hazard in their homes and knowingly misguiding consumers.

73.   Another consumer reported the same problem in July of 2017:[8]

Sharp Microwave oven model KB6524PS caused much smoke during normal use. The unit is 3 years old and I had called Sharp within 4 months of purchasing to report loud humming that would happen randomly. I was advised that this happens from time to time and that it was normal and not a warrantable condition.

The noise has been becoming more frequent and recently the noise is present with smoke now that fills my kitchen. I called the help line and they said that this happens from time to time and that it is not something to worry about.

74.   In May of 2016, another consumer noted:[9]

We own two Sharp Microwave Drawers - model smd2470AS. Both were manufactured in September 2015, installed in a new home in January 2016 and not used until we moved in in March 2016. Each unit is on its own independent electrical circuit, with no other appliances on either circuit.

On Saturday, May 7th around noon, while cooking a sausage, one of the units (serial number 128968) had an electrical "event" - significant smoke pouring out of the unit accompanied by loud cracking electrical noise. The circuit breaker did not trip. I called Sharp immediately and reported this event (Sharp case number [REDACTED]). As it was a Saturday, the[y] asked that I call back on Monday.

On Sunday, May 8th, while i was using the other unit (serial number 128862) to cook a potato, it also had an identical electrical "event" - significant smoke pouring out of the unit accompanied by loud cracking electrical noise. Again, the circuit breaker did not trip. On Monday, May 9th I called Sharp and added this information (Sharp case number [REDACTED]).

I told the Sharp personnel that had I not been in the kitchen there could have been a major, house-threatening electrical fire. I offered to have them remove the units to analyze what is happening. The Sharp "Safety Department" seems not to be interested in this.

---

[8] https://www.saferproducts.gov/ViewIncident/1664034 (last accessed Dec. 27, 2018).

[9] https://www.saferproducts.gov/ViewIncident/1571856 (last accessed Dec. 27, 2018).

75.     Sharp's response to numerous customer complaints demonstrate that not only is Sharp aware of the dangerous and potentially harmful defect, it attempts to actively conceal the dangerous defect from consumers by claiming, for example, that the problems are not safety hazards because the arcing is contained in the Microwave, or that the signs of the defect are caused by things other than a defect, including loose AC connections.[10]

76.     Similarly, numerous Amazon reviewers reported the same problems. In fact, 33% of the reviewers gave the SMD2470AS just one (1) star, in part due to the premature failure flowing from the defect.  For example, on an Amazon page selling the Microwave one consumer noted:[11]

> Why is Amazon still selling this Microwave on their website with the significant problems reported? All you need to do is look at the feedback with a rating of 1 and you can see there is a manufacturing defect. This Microwave is just 6 months installed and it melted down like Chernobyl.....sounded more like a garbage disposal then a microwave. Smoke started pouring out of the unit and got so hot I can't believe it didn't start a fire.... Very concerned based on what others have noted that replacing this unit under warranty still results in same issues and this problem has not been addressed by Sharp. I have to imag[in]e it won't be long before someone decides to start a Class Action lawsuit, or there is a major recall.

77.     By July of 2016, if not earlier, consumers were reporting fears of fire and failures with replacement Microwaves:[12]

> ROUND ONE: We've had this microwave for 2 months. Today it started smoking, and not the food, but the actual microwave. It smelled electrical. I'm awaiting word from Sharp on how to handle. Not too happy.
>
> After a service call (the first repair company was a no-show, so add yet another week to get a second company out) this was unfixable and a replacement unit was approved and shipped. After going 4 weeks without a microwave, we were excited to have it working again.

---

[10] *See* fns. 6-9.

[11] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/dp/B00U6YFOZ6?th=1 (last accessed Dec. 27, 2018).

[12] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/product-reviews/B00U6YFOZ6/ref=cm_cr_dp_d_hist_1?ie=UTF8&filterByStar=one_star&reviewTyp e=all_reviews#reviews-filter-bar (last accessed June 26, 2019).

ROUND TWO: TWO DAYS AFTER DELIVERY (right around Labor Day 2016) the SAME THING HAPPENED. Smoke in the house after reheating some coffee. They sent another technician, it was unfixable, and a THIRD unit was approved and delivered.

ROUND 3: February 24th 2017: This time the microwave has simply stopped heating anything. Customer Service was called and a technician has been scheduled for 3/1. The technician was anther no-show. Another technician has been scheduled, add yet another week.

IN SUMMARY - SAVE YOURSELF AND DO NOT BUY THIS MICROWAVE!

78.     By August 2016, if not earlier, consumers were reporting that Sharp technicians were acknowledging the company's awareness of the problems with the Microwaves:[13]

DO NOT BUY THIS PRODUCT - A DEFECTIVE UNIT -GOOGLE THIS MODEL AND YOU WILL ALSO SEE MULTIPLE COMPLAINTS. I BOUGHT THIS UNIT AND USED IT ONLY A WEEK BEFORE IT HAD PROBLEMS. I WAS HEATING MY TEA WHEN IT BEGAN TO MAKE A STRANGE NOISE, I OPEN UP THE DRAWER AND I COULD SEE WHITE SMOKE AND SMELL SOMETHING BURNING. THE SERVICE MAN SAID HE HAS SEEN THIS SAME PROBLEM SEVERAL TIMES IN THIS MODEL. HE SAID THE MODEL MOTOR QUITS TURNING AND IT STARTS TO BURN A HOLE IN THE CAVITY. HE SENT PICTURES TO SHARP AND TOLD ME THAE WOULD SEND A REPLACEMENT. I CALLED SHARP AND EXPLAINED BECAUSE OF A FIRE HAZARD I DID NOT WANT A REPLACEMENT- I WANTED A REFUND. THEY TOLD ME THEY COULD NOT REIMBURSE ME BECAUSE OF WARRANTY. I PURCHASED THE UNIT ON NOV. 2015 BUT BECAUSE I WAS REMODELING MY HOME - I JUST HAD THE UNIT INSTALLED AND HAD JUST STARTED USING IT. AT SOME POINT THEY WILL HAVE A LAWSUIT ON THERE HANDS. THEY NEED TO RECALL THIS MODEL.

---

[13] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/product-reviews/B00U6YFOZ6/ref=cm_cr_dp_d_hist_1?ie=UTF8&filterByStar=one_star&reviewerTyp e=all_reviews#reviews-filter-bar (last accessed June 26, 2019).

79.     Another consumer reported as follows:[14]

After one week of use we heard buzzing sound and there was lots of smoke. Took one week to get repair person here, see photos of burnt area under the chassis frame. Product has a defect that causes the painted area to burn. Repairman indicated mine was the third unit he had seen with this issue, knew right where to look. The unit is under warranty, and so I will be getting a replacement. Sharp assures me the new unit is free of any issue, which means they know of this. No other manufacturers make a drawer microwave (all use Sharp as the base model). I am stuck as the cabinet was built for this unit.

80.     In June of 2018, another consumer reported:[15]

Yesterday morning when heating oatmeal (which I do almost every morning) the microwave started making a loud electrical zapping noise followed immediately by a huge amount of white smoke coming out of the front upper area just below the control panel. I immediately turned it off, opened the drawer and removed my food. Have not tried to use it again for fear of starting another fire. From my research here with other reviews as well as Houzz this appears to be a known issue at Sharp for this microwave model manufactured in the 2016 time frame. I purchased this unit in April 2016 and my Manufactured Date is Jan. 2016.

I have reached out to Sharp via their online customer support center and will update this review as my claim progresses.

26JUN2018 Update: After contacting Sharp as mentioned above, I was informed my unit is outside of the 1 year warranty period and there is nothing they will do for me ("so you will be held responsible for the cost of repairs for the unit"). They could not provide me with an "Authorized" service/repair company in my area either. After pushing back saying that since this is a "known issue" at Sharp was there any way I can know that if I have the unit repaired at my own expense (which I am willing to do), that the part(s) used would not have the same defect and cause the same issue. I was told to have "the servicer look at the unit and its deemed unrepairable you can have the servicer send in photos along with an evaluation for further options".

_____

[14] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/product-reviews/B00U6YFOZ6/ref=cm_cr_getr_d_paging_btm_next_9?sortBy=recent&pageNumber=9 (last accessed Dec. 27, 2018).

[15] https://www.amazon.com/Sharp-SMD2470AS-Microwave-24-Inch-Stainless/product-reviews/B00U6YFOZ6/ref=cm_cr_dp_d_hist_1?ie=UTF8&filterByStar=one_star&reviewerTyp e=all_reviews#reviews-filter-bar (last accessed June 26, 2019).

> I really don't know what "further options" there might be at this point as Sharp does not appear to be interested in helping me here.

81.     Similarly, numerous consumers have reported that the Microwaves are not heating their food, as it should.  This is a result of the Microwaves failure to operate at the represented 950 watts.[16]

82.     In conjunction with Sharp's experience designing and selling the Microwaves, these facts and complaints illustrate that Sharp knew or should have known of the Defect.

83.     In fact, Sharp has been publicly responding to these complaints since at least 2016, misrepresenting its response to warranty claims and complaints, as well as the cause of the Microwave failure, including *inter alia*, the"[F]ailure of this component does not present a safety hazard since the board is located within the metal electrical enclosure of the unit."[17] This response evidences both Sharp's knowledge of the Defect, and its failure to take the Defect seriously. Sharp's acknowledgment of the "failure of th[e] component," and its related response that this failure (which involves crackling, buzzing and overheating) is contained within the Microwave unit is very telling of Sharp's efforts to sweep this very serious (and known) Defect under the rug.

84.     Further, through sources such as pre-release design and testing information, and regulary quality control testing,Sharp knew or should have known of the defect.

85.     Despite its knowledge, Sharp did not remedy or eliminate the Defect in the Microwaves or remove them from the stream of commerce.

86.     Instead, Sharp replaced the defective Microwaves with equally defective Microwaves, improperly denied warranty claims, and often tried to force consumers into signing releases and waivers of their rights if the consumer sought relief from the manufacturer.

---

[16] https://www.amazon.com/Sharp-KB-6524PS-24-Inch-Microwave-Stainless/product-reviews/B001QFYDSI/ref=cm_cr_arp_d_hist_1?filterByStar=one_star&pageNumber=1 (Las Accessed July 5, 2019).

[17] https://www.saferproducts.gov/ViewIncident/1581834 (Last accessed May 2, 2019); *see also* https://www.saferproducts.gov/ViewIncident/1571856 (Last accessed May 2, 2019); and https://www.saferproducts.gov/ViewIncident/1664034 (Last accessed May 2, 2019) (emphasis added).

87.     Sharp has a duty to disclose the Defect and to not conceal the Defect from Plaintiff and Class Members. Sharp's failure to disclose, or active concealment of, the serious safety defect places Plaintiff and Class members at risk of personal injury and/or property damage.

88.     Upon information and belief, Sharp has not remedied the Defect and is currently still selling the defective Microwaves, concealing the defect, failing to notify consumers of the safety defect, and failing to recall the Microwaves.

89.     Moreover, Sharp continues to falsely represent through written warranties that the Microwaves are free from defect, are of merchantable quality, and will perform dependably for years.

90.     When corresponding with customers, Sharp does not disclose that the Microwaves suffer from the Defect. As a result, reasonable consumers, including Plaintiff and Class Members, purchased and used, and continue to purchase and use, the Microwaves in their homes even though it is unsafe to do so.

91.     Had Plaintiff, Class Members, and the consuming public known that the Microwaves were defective, posed an unreasonable risk of harm to themselves and their property, and would cause damage, they would not have purchased the Microwaves.

92.     Sharp has wrongfully placed on Plaintiff and Class members the burden, expense, and difficulty involved in discovering the Defect, repairing and replacing the Microwaves (potentially multiple times), and paying for the cost of damages caused by the Defect.

## **TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

93.     Sharp was and is under a continuous duty to disclos to Plaintiff and Class members the true character, quality, and nature of the Microwaves.  Sharp actively concealed—and continues to conceal—the true character, quality and nature of the Microwaves and knowingly made misrepresetations about the quality and safety of the Microwaves.  Plaintiff and Class Members reasonably relied upon Sharp's knowing and affirmative representations and /or active concealment of these facts.

94.     Sharp had actual awareness for years that the Microwaves  contain the Defect that causes the magnetron to overheat and the unit to burn and prematurely fail.

95.     Although Sharp was aware of the dangerous Defect, it took no steps to warn  Plaintiff or the Class of such defect and the dangers the defect would pose.  Instead, it actively and fraudulently concealed the Defect from consumers.

96.     At least by 2015, if not earlier, Sharp had received numerous reports from consumers of incidents of  loud noises, foul odors, smoke, and fire associated with the Microwaves.

97.     Sharp has purportedly changed its manufacturing process in its attempt to correct the problem for newly manufactured Sharp-branded microwave ovens, without notifying consumers of these changes.

98.     Sharp did not, however, issue a recall, warn consumers, or take any other  affirmative steps to correct the problem in the Microwaves already in the field with the defective magnetron, nor did Sharp take steps to alert members of the Class about the problem.

99.     Despite its knowledge, Sharp concealed the fact that the Microwaves were defective, even though it had a duty to disclose the Defect.

100.    Sharp made affirmative misrepresentations to consumers during the sale of the Microwaves, including that the Microwaves were free of defects and that the Microwaves would be repaired or replaced within the first five (5) years after purchase if the magnetron tube failed to operate.

101.    Sharp made affirmative misrepresentations to Plaintiff and consumers during warranty claims and other correspondence with consumers lodging complaints, including that, their Microwave failures were anomalous; the failures were not safety hazards; the problems with the Microwaves have been resolved in an effort to persuade consumers to accept replacement Microwaves; Microwaves more than one (1) year old were out of warranty; and in other ways to be discovered.

102.    At all times, Sharp concealed that the Microwaves and any replacements were

defective.

103.   Sharp's concealment was material to Plaintiff and Class Members' decision to purchase the Microwaves.  Sharp's concealment  was knowing, and Sharp intended to mislead Plaintiff and Class Members into relying upon it. Accordingly, Plaintiff and Class Members relied upon Sharp's concealment of these material facts and suffered  injury as a proximate result of that justifiable reliance.

104.   The Defect in the design and/or manufacture of the Microwaves was not detectible to Plaintiff and members of the Class.

105.   Sharp actively and intentionally concealed the existence of the defect and failed to inform Plaintiff or Class Members of the existence of the defect at all times, including when they contacted Sharp about the problems.  Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to lack of diligence on their part.

106.   Sharp's statements, words, and acts were made for the purpose of suppressing the truth that the Microwaves, including the replacement Microwaves, were defective.

107.   Sharp concealed the defect for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

108.   As a result of Sharp's active concealment of the Defect and/or failure to inform Plaintiff and members of the Class of the Defect, any and all applicable statutes   of limitations otherwise applicable to the allegations herein have been tolled.  Furthermore, Sharp is estopped from relying on any statutes of limitations in light of its active concealment of the  defective nature of the Microwaves.

## CLASS ACTION ALLEGATIONS

109.   Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Class:

> All persons residing in the State of Florida who purchased a  Sharp Microwave Drawer, model numbers SMD2470AH, SMD2470AS, SMD3070AS, SMD2480CS, KB6524PS, and KB6525PS.

110.    Plaintiff reserves the right to modify the class definition if necessary to include additional Sharp Microwave Drawer models with the same defect and/or other Microwave Drawers manufactured by Sharp with the common Defect but bearing different brand names.

111.    <u>Numerosity</u>: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown, it consists of thousands of people geographically disbursed throughout Florida. The number of Class members can be determined by sales information and other records. Moreover, joinder of all potential Class members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Sharp and its third-party distributors.

112.    <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class Members because Sharp has acted on grounds generally applicable to the Class.  Such common legal or factual questions include, *inter alia*:

(a)    Whether the Microwaves are defective;

(b)    Whether the Microwaves are defectively designed and/or manufactured;

(c)    Whether Sharp knew or reasonably should have known about the Defect prior to distributing and selling the Microwaves to Plaintiff and the Class;

(d)    Whether Sharp concealed from and/or failed to disclose to Plaintiff and the Class the problems with the Microwaves;

(e)    Whether Sharp knew or reasonably should have known about the Defect after distributing the Microwaves to Plaintiff and the Class;

(f)    Whether Sharp breached express warranties relating to the Microwaves;

(g)    Whether Sharp breached implied warranties relating to the Microwaves;

(h)    Whether Sharp was unjustly enriched by receiving moneys in exchange for Microwaves that were defective;

(i)    Whether Sharp should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the defective Microwaves;

(j)    Whether Plaintiff and the Class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(k)   Whether Sharp should be enjoined from selling and marketing the defective Microwaves;

(l)   Whether Sharp engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Microwaves; and

(m)   Whether Sharp negligently designed or manufactured the defective Microwaves.

113.   <u>Typicality</u>:  Plaintiff's claims are typical of the members of the Class as all  members of the Class are similarly affected by the same Defect and Sharp's actionable conduct. Plaintiff and all members of the Class purchased the Microwaves with a Defect that  makes the Microwaves inherently dangerous. In addition, Sharp's conduct that gave rise to the claims  of Plaintiff and members of the Class  (*i.e.* delivering a defective microwave  drawer, concealing the Defect, and breaching warranties respecting the Microwaves) is the  same for all members of the Class.

114.   <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately protect the interests of the Class because he has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel   experienced and competent in the prosecution of complex class action litigation.

115.   <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Sharp will continue to commit the unlawful practices alleged herein including, but not limited to, its failure to acknowledge the Defect and its unlawful denial of valied warranty claims. Further, Class Members will remain at an unreasonable and serious safety risk as a result of the Defect and Sharp's failure and refusal to acknowledge and remedy the Defect. Sharp has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

116.   <u>Predominance</u>: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous

venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly-situated plaintiffs.

117.    Plaintiff knows of no difficulty to be encountered in the maintenance of this  action that would preclude its maintenance as a class action.

118.    Sharp has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief  with respect to the Class as a whole.

### FIRST CLAIM FOR RELIEF
**Breach of Implied Warranties**
**(Plaintiff Individually and on Behalf of All Others Similarly Situated)**

119.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceeding Paragraphs 1-118 into this cause of action and claim for relief as if fully set forth herein.

120.    Plaintiff brings this cause of action individually and on behalf of the Class.

121.    Sharp is a merchant and was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Microwaves.  Sharp knew or had reason to know of the specific use for which the Microwaves, as goods, were purchased.

122.    Sharp provided Plaintiff and Class Members with implied warranties that the Microwaves were merchantable and fit for the ordinary purposes for which they were used and sold, and were not otherwise injurious to consumers.

123.    However, the Microwaves are not fit for their ordinary purpose of providing reasonably reliable and safe heating of food because, *inter alia*, the Microwaves contain a Defect preventing the Microwaves from safely heating food without electrical arcing, smoking, melting the magnetron tube and potentially catching fire, as well as preventing the Microwaves from cooking food at the represented wattage.  Therefore, the Microwaves are not fit for their particular purpose of safely heating and/or cooking food.

124.    The problems associated with the Defect, such as electrical arcing, smoking, melting the magnetron tube and potentially catching fire are safety risks such that the Microwaves do not provide safe reliable cooking appliances, and therefore, there is a  breach of the implied warranty of merchantability. These problems are exacerbated, in part, by Sharp's failure to design and/or implement a safety function that will shut the Microwaves off in the event of arcing.

125.    Plaintiff and each of the members of the class have had sufficient direct dealings with either Sharp or one of its agents to establish privity of contract between sharp, on the one hand, and plaintiff and each of the  members of the class, on the other hand.  Notwithstanding, privity is not required because Plaintiff and each of the members of the class are the indended beneficiaries of Sharp's written warranties and its relationships with retailers.  The retailers were not intended to be the ultimate consumers of the Microwaves, and have no rights under the warranty agreements provided by Sharp.  Sharp's warranties were designed for and intended to beneit the consumer only and Plaintiff and Class Members were the intended consumers of the Microwaves.

126.    Sharp impliedly warranted that the Microwaves were of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that the Microwaves manufactured, supplied, distributed, and/or sold by Sharp were safe and reliable for heating food; and (ii) a warranty that the Microwaves would be fit for their intended use while the Microwaves were being operated.

127.    Contrary to the applicable implied warranties, the Microwaves, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe methods of heating food.  Instead, the Microwaves suffer from a defective design and/or manufacture, as alleged herein.

128.    Sharp's failure to adequately repair or replace the defective Microwaves has caused the warranty to fail of its essential purpose.

129.    Sharp breached the implied warranties because the Microwaves were sold with the Defect, which substantially rediuced and/or prevented the Microwaves from being used for safe food preparation.

130.    As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**SECOND CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(Plaintiff Individually and on Behalf of All Others Similarly Situated)**

131.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceeding Paragraphs 1-118 into this cause of action and claim for relief as if fully set forth herein.

132.    In connection with its sale of the Microwaves, Sharp expressly warranted that they were free from defects at the time of shipping, operated at up to 950-1000 watts, and suitable for heating food.

133.    The defectively designed Microwaves are subject to and otherwise covered by Sharp's Consumer Limited Warranty, which applies to each Microwave.

134.    Each of the Microwave models has an identical or substantially identical warranty.

135.    Sharp was obligated, under the terms of the express warranty to adequately repair or replace the defective Micowaves for Plaintiff and Class Members.

136.    In the Consumer Limited Warranty, Sharp warrants that "when shipped in its original container, [the Microwaves] will be free from defective workmanship and materials, and agrees that it will, at its option, either repair the defect or replace the defective Product or part thereof with a new or remanufactured equivalent at no charge to the purchaser for parts or labor for the period(s) set forth…" As alleged herein, the Microwaves are not free from defects in workmanship and materials at the time they are "shipped" and thus the warranty is breached at the point of sale.

137.    The Consumer Limited Warranty further states that in accordance with such warranty, Sharp, "agrees that it will, at its option, either repair the defect or replace the defective Product or part thereof with a new or remanufactured equivalent at no charge to the purchaser for parts or labor for the period(s) set forth below."

138.    Further, the Warranty Period for the Microwaves is: "One (1) year parts and labor including in-home service. The warranty period continues for an additional four (4) years, for a total of five (5) years, with respect to the magnetron tube in the Product for parts only; labor and service are not provided free of charge for this additional period."

139.    Sharp further breached the warranty because it improperly and unlawfully denies valid warranty claims, and it has failed or refused to adequately repair or replace the Microwaves with non-defective units.Plaintiff and the Class Members have privity of contract with Sharp through their purchase of the Microwaves, and through the express written and implied warranties that Sharp issued to its customers. Sharp's warranties accompanied the Microwaves and were intended to benefit end-users of the Microwaves. To the extent Class Members purchased the Microwaves from third-party retailers or via the purchase of their homes, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Sharp and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are intended to benefit the ultimate consumer or user of the Microwaves.

140.    The express written warranties covering the Microwaves were a material part of the bargain between Sharp and consumers. At the time it made these express warranties, Sharp knew of the purpose for which Microwaves were to be used.

141.    Sharp breached its express warranties by selling Microwaves that were, in actuality, not free of defects, not made for years of dependable use, not made from merchantable material and workmanship, were unsafe for use, and could not be used for the ordinary purpose of heating food. Sharp breached its express written warranties to Plaintiff and Class Members in that the Microwaves are defective at the time they leave the manufacturing plant, and on the first day of purchase, creating a serious safety risk to Plaintiff and Class Members.

142.    The Microwaves that Plaintiff and Class Members purchased contained a Defect that caused each of them damages including loss of the product, loss of the benefit of their bargain, and property damage.

143.     Any limitations on remedies and the exclusions in Sharp's warranties are unconscionable and unenforceable in light of the fact that Sharp knew that the Microwaves suffered from the defect described herein.

144.     Plaintiff and Class Members notified Sharp of its breach of the express warranty shortly after their Microwaves failed to perform as warranted due to the defect.   Nonetheless, Sharp unlawfully denied Plaintiff's warranty claim.

145.     Moreover, Sharp was put on constructive notice about its breach through its review of consumer complaints and media reports described herein, and, upon information and belief, through product testing.

146.     Upon information and belief, Sharp received further notice and has been on notice of the defective nature of the Microwaves and of its breaches of warranties through customer warranty claims reporting problems with Sharp, consumer complaints at various sources, and its own internal and external testing. Sharp also received such notice through Plaintiff who twice complained to Sharp about the defective Microwave and resulting damage.

147.     Despite having notice and knowledge of the defective nature of the Microwaves, Sharp failed to provide any relief to Class Members with Microwaves more than one (1) year old, failed to provide a non-defective replacement Microwave to Plaintiff and Class Members, and otherwise failed to offer any appropriate compensation from the resulting damages.

148.     Sharp breached its express warranty to adequately repair or replace the Microwave despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Microwaves.

149.     To the extent that Sharp offered to replace the defective Microwaves, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiff Hamm and Class Members whole because the warranty covering the Microwaves gives Sharp the option to repair or replace the Microwave, where neither is sufficient. Specifically, in its course of business, Sharp has opted to provide a replacement Microwave to complaining consumers; however, the replacement Microwave likewise contains the Defect, resulting in the same safety risks to the

owners, and the same or similar damages can occur to the replacement Microwave and the owner's personal property.

150.    Accordingly, recovery by Plaintiff and Class Members is not limited to the limited warranty of replacement, and they seek all remedies allowed by law.

151.    Had Plaintiff, Class Members, and the consuming public known that the Microwaves were defective, posed an unreasonable risk of harm to themselves and their property, would cause damage, or that Sharp would not properly honor its warranty, they would not have purchased the Microwaves.

152.    To the extent any express warranties do not by their terms cover the defects alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiff and Class Members whole, the warranty fails of its essential purpose and, accordingly, recovery by Plaintiff and Class Members are not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

153.    Any attempt by Sharp to limit or disclaim the express warranty in a manner that weould exclude coverage of the Defect is unconscionable as a mater of law because the relevant purchase transactions were taited by Sharp's concealment of matieral facts.  Thus, any such effort to disclaim, or otherwise limit, its liability for the Defect is null and void.

154.    Plaintiff and Class Members have performed all duties required of them under the terms of the express warranty, except as may have been excused or prevented through the conduct of Sharp or by operation of law in light of Sharp's conduct described throughout this Complaint.

155.    Sharp has received timely notice regarding the problems at issue in this litigation, and notwithstanding, Sharp  has failed and refused to offer an effective remedy.

156.    As a direct and proximate result of Sharp's breach of its express written warranties, Plaintiff and Class Members have suffered damages and did not receive the benefit of the bargain and are entitled to recover compensatory damages, including, but not limited to the cost of inspection, repair and diminution and value.

**THIRD CLAIM FOR RELIEF**
**(IN THE ALTERNATIVE)**
**Breach of Contract**
**(Plaintiff Individually and Behalf of All Others Similarly Situated)**

157.    Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-118 into this cause of action and claim for relief as if fully set forth herein.

158.    To the extent Sharp's commitment is deemed not to be a warranty under Florida's Uniform Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law.

159.    Plaintiff and Class Members purchased the Microwaves from Sharp or through retailers such as Home Depot, Lowe's, Amazon, and other appliance stores.

160.    Sharp expressly warranted that the Microwaves were fit for their intended purpose and that they were free of defects, suitable for safe heating of food, and heat food at 950 watts.

161.    Sharp made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Sharp.

162.    Defendant breached the warranties and/or contract obligations by placing the defective Microwaves into the streat of commerce and selling them to consumers, when they knew the Microwaves contained defects, were prone to premature failure, did not safely heat food, and did not heat food at 950 watts.  These deficiencies substantially and/or completely impair the use and value of the Microwaves.

163.    The defeciencies described existed when the Microwaves left Sharp's possession or control and were sold to Plaintiff and Class Members.  The deficiencies and impairment of the use and value of the Microwaves was not discoverable by Plaintiff or Class Members at the time of the purchase of the Microwaves.

164.    As a direct and proximate cause of Sharp's breach of contract, Plaintiff and Class Members were harmed because they would not have purchased the Microwaves if they knew the truth about the defective condition of the Microwaves.

### FOURTH CLAIM FOR RELIEF
### (IN THE ALTERNATIVE)
**Unjust Enrichment**
**(Plaintiff Individually and Behalf of All Others Similarly Situated)**

165.   Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-118 into this cause of action and claim for relief as if fully set forth herein.

166.   This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any contracts between Class Members and Sharp do not govern the subject matter of the disputes with Sharp, or that Plaintiff does not have standing to assert any contractual claims against Sharp.

167.   Plaintiff and Class Members conferred a monetary benefit on Sharp, and Sharp had knowledge of this benefit. The average price paid by Plaintiff and Class Members for the Microwaves was more than $900.00.

168.   By its wrongful acts and omissions described herein, including selling the defective Microwaves, Sharp was unjustly enriched at the expense of Plaintiff and Class Members.

169.   Plaintiff and Class Members' detriment and Sharp's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

170.   It would be inequitable for Sharp to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the defective Microwaves.

171.   Plaintiff and Class Members seek restitution from Sharp and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Sharp from their wrongful conduct and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

### FIFTH CLAIM OF ACTION
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201 *et seq.***
**(Plaintiff Individually and of All Others Similarly Situated)**

172.   Plaintiff hereby re-alleges and incorporates all allegations raised in the preceding Paragraphs 1-118 into this cause of action and claim for relief as if fully set forth herein.

31

173.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* The stated purpose of this Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id*. § 501.202(2).

174.    Plaintiffs and all Class members are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by FDUTPA. *See id*. § 501.203(7)-(8).

175.    FDUTPA        declares        unlawful        "[u]nfair        methods        of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 501.204(1).

176.    Sharp manufactures, distributes, markets, advertises and sells the Microwaves. The Microwaves are "goods" within the meaning of FDUTPA.

177.    For the reasons discussed herein, Sharp violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Florida Statute §501.201, *et seq.* Defendant's acts and practices, including its omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

178.    Sharp engaged in the following unconscionable, unfair, deceptive, and unconscionable practices:

      (a)    Sharp manufactured, distributed, marketed, advertised and sold the Microwaves with the Defect, which was present at the point of sale;

      (b)    Sharp knew or should have known of the Defect and failed to disclose or concealed the Defect from consumers;

      (c)    Sharp knew the Defect within the Microwaves was unknown to consumers, and would not be easily discovered by Plaintiff and putative Class Membes, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Microwaves;

(c)     Sharp warranted that the Microwaves are free from defects and possesses built-in safety features, when the Microwaes contain the Defect; and

(d)     Sharp represented to consumers, including Plainitff and Class Members, that the Microwaves are safe and fit for the use for which they were intended, both before and after consumers complained of the Defect.

179.    Sharp warranted and represented that the Microwaves were safe and free from defects in materials and workmanship and that they were suitable for its intended use. However, the Microwaves contain a Defect making them susceptible to premature failure and catching fire, including when used for its intended purpose.

180.    Sharp had exclusive knowledge of material facts concerning the Defect, including that it caused an obstruction or disturbance in the transmission of the energy to the cooking cavity, causing the Microwaves operate at a maximum of only 750 watts, despite Sharp advertising and marketing the Microwaves as having 950 watts cooking capacity.

181.    Sharp had exclusive knowledge of material facts concerning the Defect, including that it made the Microwaves susceptible to premature failure and catching fire, including when used for its intended purpose.

182.    Sharp knew, by at least 2015, including two years before Plaintiff purchased his Microwave, that the Microwaves suffered from the dangerous Defect, and were not suitable for their intended use.

183.    Despite Sharp's exclusive knowledge of material facts concerning the existence of the Defect in the Microwaves, Sharp actively concealed the Defect from consumers by failing to disclose the Defect to consumers.

Despite Sharp's exclusive knowledge of material facts concerning the existence of the Defect in the Microwaves, Sharp denied the existence of the Defect to consumers complaining about the Defect.

184.    Plaintiff purchased the Microwave after performing research and viewing models of the Microwaves.  Specifically, Plaintiff purchased based, in part, on Sharp's representations that

the Microwaves were of high quality. Plaintiff's purchase was also based on the uniqure drawer feature that would be installed in custom cabinetry and free up counterspace.  Plaintiff was unaware of the Defect at the time he purchased the Microwave and had no reason to know of the Defect at that time.

185.   Based on brand name and the price of the Microwave, Plaintiff also believed the warranty would be longer than just one year and expected Sharp would repair or replaced the Microwave if it failed.

186.   Sharp's practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.  Consumers, including Plaintiff and Class Members, would not have purchased the Microwaves, or would have paid less for them, had they known that the Microwaves contained the Defect.

187.   Sharp's violations described herein present a continuing risk to Plaintiff and the general public.  Sharp's unlawful acts and practices complained of herein affect the public interest.

188.   As a result of Sharp's misconduct, Plaintiff and Class Members have been harmed and suffered actual damages in that the Microwaves have a serious safety Defect, causing inconvenience, and the inability to safely cook food.

189.   As a direct and proximate result of Sharp's unfair or deceptive acts or practices, Plaintiff and Class Members have been damaged, and are entitled to recover actual damages to the extent permitted by law, including class actin rules, in an amount to be proven at trial.

190.   Plaintiff seeks an order enjoining Sharp's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Florida UDTPA and applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

A.  Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

34

B.  Name Plaintiff as Class Representatives and her counsel as Class Counsel;

C.  Award damages, including compensatory, exemplary, and statutory damages, to Plaintiff and the Class in an amount to be determined at trial;

D.  Grant restitution to Plaintiff and the Class and require Sharp to disgorge its ill-gotten gains;

E.  Permanently enjoin Sharp Electronics Corporation from engaging in the wrongful and unlawful conduct alleged herein;

F.  Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.  Award Plaintiff and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.  Award such further relief as the Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

DATED:  September 25, 2019                    Respectfully submitted,

/s/ Rachel Soffin
Rachel Soffin (FL Bar # 18054)
Gregory F. Coleman*
Lisa A. White*
Adam A. Edwards*
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080 F: 865-522-0049
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com
lisa@gregcolemanlaw.com
adam@gregcolemanlaw.com

Harper T. Segui*
Daniel K. Bryson*
**WHITFIELD BRYSON & MASON, LLP**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
dan@wbmllp.com
harper@wbmllp.com

Hassan A. Zavareei*
Andrea Gold*
**TYCKO & ZAVAREEI LLP**
1828 L. Street, NW, Suite 1000
Washington, D.C 20036
Telephone: (202) 973-0900
jtycko@tzlegal.com
hzavareei@tzlegal.com
agold@tzlegal.com

*To be admitted *pro hac vice*

CLASS ACTION COMPLAINT