**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **MICHAEL HAMM, JILL BROWN, AUSTIN RUSSELL, CHRISTIAN LAMMEY, NANCY JAMES, JILL WITTMAN,** and **THOMAS MACONE,** individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**SHARP ELECTRONICS CORPORATION**,<br><br>Defendant. | Civil Action: 5:19-cv-488-Oc-30PRL<br><br>Judge James S. Moody, Jr.<br><br>Magistrate Judge Philip R. Lammens |

**FINAL APPROVAL ORDER**

This matter is before the Court on Plaintiffs' Unopposed Motion for Final Approval of the Settlement Agreement that Plaintiffs Michael Hamm, Jill Brown, Austin Russell, Christian Lammey, Nancy James, Jill Wittman, and Thomas Macone ("Plaintiffs") have reached with Defendant Sharp Electronics Corporation ("Sharp"). In connection with that Motion, the Court has considered and reviewed the following materials: (1) Plaintiffs' Unopposed Motion for Final Approval of the Settlement (the "Motion"), along with its accompanying declarations and other materials; and (2) the Settlement Agreement and Release and the exhibits attached thereto (the "Settlement Agreement").[1] In addition, the Court has considered the arguments of counsel as well as the pleadings and record in this case. As part of the Settlement Agreement, Sharp is not objecting to the certification of the Settlement Class for settlement purposes only. Having considered all the

---

[1] Unless otherwise stated, all defined terms herein have the meaning given to such terms in the Settlement Agreement.

foregoing materials and information, this Court finds that there is good cause for granting the Motion.

## BACKGROUND

1. As discussed in the Parties' briefing and at the January 7, 2021, Final Approval Hearing in this action, Plaintiffs claim that that Sharp's Microwave Drawers, including model numbers SMD2470AH, SMD2470AS, SMD3070AS, SMD2480CS, KB6524PS, and KB6525PS (collectively, "Microwaves"), have an alleged defect which may in certain instances cause arcing, which renders the Microwaves prone to premature failure. Sharp denies Plaintiffs' allegations, and the Parties engaged in significant hard-fought litigation and arm's length negotiations prior to reaching the Settlement.

2. The Settlement provides immediate benefits to Settlement Class Members, which the Plaintiffs' expert has collectively valued at approximately $103,049,520 to $113,884,064. *See* ECF No. at Exhibit 2, Expert Report from Frank Bernatowicz. Sharp does not object to the Bernatowicz Declaration for purposes of the Settlement, provided however that nothing in the Bernatowicz Declaration shall be deemed an admission by Sharp or shall be binding in this or any other litigation as against Sharp.

3. As described in the Preliminary Approval Order (ECF No. 46), in reference to the Settlement Agreement, these benefits include the following:

    a. Extended Warranty: All Class Members shall receive an extension of the existing manufacturer's warranty for Documented Arcing Claims within any Class Microwave. The Extended Warranty shall extend the term of the existing manufacturer's warranty of one (1) year for parts and labor, and five (5) years for

parts relating only to the magnetron tube, to an enhanced extended warranty of five (5) years for Documented Arcing Claims.

b. Treatment under Extended Warranty:

   i. Replacement Microwave and Reimbursement of Labor and/or Service Costs: The extended warranty includes the opportunity to receive a new replacement Microwave, which is comparable to the existing Class Microwave, in the event of a Documented Arcing Claim, along with reimbursement of any labor and/or service costs in connection with the Documented Arcing Claims of up to $150.00 per class member.

   ii. Cash Option and Reimbursement of Labor and/or Service Costs: In lieu of a replacement Microwave, consumers who have a Documented Arcing Claim during the extended five (5) year warranty period may select a $250 cash payment. Settlement Class Members who elect this cash payment remain entitled to reimbursement of any labor and/or service costs in connection with Documented Arcing Claims of up to $150.00 per Settlement Class Member.

   iii. Voucher and Reimbursement of Labor and/or Service Costs: In lieu of a replacement Microwave or Cash Payment, consumers who have a Documented Arcing Claim may select a $500 voucher for Sharp-branded merchandise. Settlement Class Members who elect this option remain entitled to reimbursement of any labor and/or service costs in connection with Documented Arcing Claims of up to $150.00 per Settlement Class Member.

    iv. <u>Consequential Damages</u>: Settlement Class Members who elect either the cash payment or voucher option may also seek reimbursement for consequential damages of up to $200, for costs incurred to repair or cover the opening in a Settlement Class Member's kitchen cabinetry in which their Microwave was installed.

4. In addition, any Settlement Class Member who can establish, with documented proof, that their Class Microwave experienced a Documented Arcing Claim instance within five (5) years of the date of purchase or installation of their Microwave, who did not previously receive a replacement Microwave, is entitled to replacement of their Microwave, or to the cash or voucher option, as described herein. Thus, Settlement Class Members who no longer possess their Microwave, or who possessed a Microwave for a period beyond the five (5) year extended warranty but experienced a Documented Arcing Claim within five (5) years of the date of purchase or installation of their Microwave, have an opportunity to participate in the Settlement.

5. On August 5, 2020, the Court entered an Order preliminarily approving the Settlement and authorizing that the Parties and the Settlement Administrator TO implement the Parties' Notice Plan. (ECF No. 46.)

## CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

6. In its August 5, 2020 Order, the Court found that Rule 23 certification was appropriate for preliminary approval. (ECF No. 46.) Based on the facts and argument stated herein and for the reasons set forth in the Memorandum in support of the Motion for Preliminary for Approval (ECF No. 44), and Plaintiffs' Motion for Final Approval (ECF No. ),  class certification of the Settlement Class is well warranted here. For the same reasons, also warranted are the designations of Class Counsel and the Plaintiffs as Class Representatives. The Court finds

that the prerequisites for a class action set forth pursuant to Rule 23 of the Federal Rules of Civil Procedure have been met, and, therefore, the Court certifies a nationwide Settlement Class consisting of the following, as more fully defined in paragraph 1.37 of the Settlement Agreement:

> All persons residing in the United States who, at any time during the Class Period, became the First Consumer Purchaser of a Class Microwave.

7. Based on Plaintiffs' Motion for Preliminary Approval and Plaintiffs' Motion for Final Approval, which Sharp is not opposing for purposes of this Settlement only, this Court finds that:

   a. The Settlement Class satisfies the requirements of Rule 23(a). The members of the Settlement Class are so numerous that joinder is impracticable; there are questions of law or fact common to the Settlement Class; Plaintiffs' claims are typical of the claims of the Settlement Class; and Plaintiffs and Class Counsel will fairly and adequately represent the interests of the Settlement Class;

   b. The Settlement Class also satisfies the requirements of Rule 23(b)(3) because this Court finds that issues of law and fact common to the Settlement Class predominate over any issues affecting only individual members of the Settlement Class, and that settlement of this Action as a class action is superior to other means available for fairly and efficiently resolving the controversy; and

   c. The class definition is sufficiently ascertainable such that an individual can ascertain whether he or she is in the Settlement Class based on objective criteria.

8. The Court finds that the proposed Class Counsel are competent and capable of exercising their responsibilities, and that they and the proposed Class Representatives have fairly and adequately represented the interests of the Settlement Class.

9. The Court affirms its appointment of the following counsel as Class Counsel for the Settlement Class:

    a. Gregory F. Coleman, Rachel Soffin, and Lisa A. White of Greg Coleman Law PC;

    b. Daniel K. Bryson and Harper Segui of Whitfield Bryson LLP; and

    c. Andrea Gold and Hassan A. Zavareei of Tycko & Zavareei LLP.

10. The Court affirms its appointment of Plaintiffs Michael Hamm, Jill Brown, Austin Russell, Christian Lammey, Nancy James, Jill Wittman, and Thomas Macone ("Plaintiffs") as Class Representatives for the Settlement Class in this Action.

## SATISFACTION OF NOTICE REQUIREMENTS

11. Rule 23(b)(3) class actions must satisfy the notice provisions of Rule 23(c)(2), and upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice" of particular information. Fed. R. Civ.P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Here, the Class Notice and Notice Plan satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977).

12. This Court previously reviewed, and conditionally approved Plaintiffs' Class Notice. (ECF No. 46 at ¶¶17-22). The Court has reviewed the Declaration of Tiffany Janowicz, Senior Vice President at Rust Consulting, Inc. ("Rust"), attached to the Motion for Final Approval

as Exhibit 4, and affirms once more that notice was adequate and that Plaintiffs complied with the notice plan for the settlement process approved by the Court.

13. The Court has determined that the Notice given to the Settlement Class fully and accurately informed the Settlement Class of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice with all applicable requirements. The Court further finds that the Notice Plan satisfies due process and has been fully and timely implemented.

14. Further, the Settlement Administrator properly and timely notified the appropriate government officials of the Settlement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. The Court has reviewed the substance of that notice and finds that it complied with all applicable requirements of CAFA. In addition, more than ninety (90) days have elapsed since the Settlement Administrator provided notice pursuant to CAFA and the Final Approval Hearing.

## FINAL APPROVAL OF SETTLEMENT

15. Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23. "In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable . . .." *In re: Corrugated Container Antitrust Litigation,* 643 F.2d 195, 206 (5th Cir. 1981) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015); Fed. R. Civ. P. 23(e)(2).

16. A strong presumption exists in favor of a settlement's fairness. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *Cotton*, 559 F.2d at 1331. Settlements are "highly favored" and "will be upheld whenever possible because they are a means of amicably resolving doubts and

preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). The public policy favoring settlement agreements is particularly strong in complex class action litigation where voluntary pretrial settlements obviate the need for expensive and time-consuming litigation. *See Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985); *Manchaca i. Chater*, 927 F. Supp. 962, 966 (E.D. Tex. 1996). *See also Warren v. City of Tampa*, 693 F.Supp. 1051, 1054 (M.D. Fla. 1988) ("settlements are highly favored in the law"); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001) (citation omitted) (the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements."). Absent fraud or collusion, trial courts should be hesitant to substitute their own judgment for the judgment of counsel in arriving at a settlement. *Cotton*, 559 F.2d at 1330.

17. The Eleventh Circuit Court of Appeals uses a six-factor test for assessing the fairness, reasonableness, and adequacy of a class settlement. The factors are: (a) whether the settlement was a product of fraud or collusion; (b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and the amount of discovery completed; (d) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (e) the possible range of recovery and the certainty of damages; and (f) the respective opinions of the participants, including class counsel, class representatives, and absent class members. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), citing 1982-2 Trade Cas. at 72, 106, citing, *inter alia*, *Container II*, 643 F.2d at 207-08; *Cotton*, 559 F.2d at 1330- 31; *Miller*, 559 F.2d at 428-29.

18. Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than

8

pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1344 (citation omitted). That is the case here.

19. Based on review of the record, the manner of negotiation, and the Settlement Agreement, there is no evidence indicating that the Settlement falls outside the requirements of the Eleventh Circuit's test articulated above, and the Court concludes the Settlement is fair, adequate, and reasonable. The terms of the Settlement Agreement, including all exhibits thereto, appear to be in the range of reason and are fair, reasonable, and adequate, and the Settlement Agreement is hereby finally approved. This Order incorporates the Settlement Agreement, and terms used in this Order that are defined in the Settlement Agreement have the same meanings.

**The Settlement is the Product of Informed Arm's-Length Negotiations**

20. A threshold consideration in determining whether to grant final approval of a class action settlement is whether a proposed settlement is the product of fraud or collusion between the parties. "In determining whether there was fraud or collusion, the Court examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Canupp v. Sheldon*, No. 04-cv-260, 2009 WL 4042928, at *9 (M.D. Fla. Nov. 23, 2009) (citing *Bennett*, 737 F.2d at 987, n.9.); *see also Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

21. The Court affirms its finding in the Preliminary Approval Order that "there is no evidence of collusion or that Class Counsel placed their interests above those of the Settlement Class in negotiating this Settlement. The material terms of the Settlement were agreed to prior to

9

the Parties' discussion of attorneys' fees, costs, and expenses, and any attorneys' fees, costs and expenses awarded will be in addition to the relief provided to Settlement Class Members under the Settlement Agreement." ECF No. 36, at ¶13.

22. Having read the Parties' briefing and having heard the Parties' arguments at the Final Approval Hearing, the Court is satisfied that the Settlement Agreement is the product of arm's-length negotiation by experienced counsel and is not the product of collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of … a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d at 1345, 1349 (no collusion where settlement reached by capable and experienced counsel with the assistance of a well-qualified, experienced mediator). "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) (citing *Adams v. Inter–Con Sec. Sys., Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007).

23. The Settlement Agreement provides comprehensive relief and compensation to eligible members of the Settlement Class. It was entered into after arm's-length negotiations by experienced counsel on behalf of the Settlement Class.

### The Complexity, Expense, and Duration of Litigation

24. Under this factor, the Court "consider[s] the vagaries of litigation and compare[s] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp. 2d at 1323. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez v. Asurion*, 501 F. Supp. 2d 1360, 1381 (S.D.Fla.

2007). If this case proceeded to trial, the Parties would incur significant expenses, consisting of the payment of expert witnesses and technical consultants, along with a substantial time commitment for the briefing of Plaintiffs' motion for class certification, *Daubert* motions, extensive trial preparation, trial attendance, post-trial motion practice, and appeal. "Complex litigation . . . can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Lipuma*, 406 F. Supp. 2d at 1323, citing *Woodward v. Nor-Am Chem. Co.*, 1996 WL 1063670 *21 (S.D. Ala. 1996) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493). And the outcome of litigation is uncertain. Sharp would have vigorously pursued dismissal and contested class certification and proceeded to summary judgment briefing. "With the uncertainties inherent in pursuing a trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a resolution by way of settlement are apparent." *Lipuma*, 406 F. Supp. 2d at 1324.

### The Stage of Proceedings at which the Settlement was Achieved

25. The stage of the proceedings at which settlement is achieved is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (quoting *Lipuma*, 406 F. Supp. 2d at 1324). While the Settlement was reached at a relatively early stage of the litigation, it was reached only after the Parties fully briefed motions to dismiss in related actions,[2] receipt of informal discovery from

---

[2]Related class actions were also filed and litigated by the undersigned Class Counsel against Sharp in the United States District Court for the Northern District of California (*Brown, et al. v. Sharp Electronics Corporation,* No: 3:19-cv-00371-JD, N.D. Cal.) ("California Action") on January 22, 2019; the United States District Court for the Middle District of Georgia (*Lammey v. Sharp Electronics Corporation*, 3:19-cv-00048-CAR, M.D. Ga.) ("Georgia Action") on May 13, 2019; the United States District Court for the Southern District of Ohio (*James, et al. v. Sharp Electronics Corporation*, No. 2:19-cv-03246-SDM-EPD, S.D. Ohio) ("Ohio Action") on July 26, 2019; and

Sharp, retention of knowledgeable and qualified experts, and expert inspection of the subject Microwaves. Thus, the record was sufficiently developed to enable the Parties to make a reasoned and informed judgment regarding the Settlement. Indeed, early settlements are encouraged so long as a reasonable investigation is conducted. *Oakes*, 2016 U.S. Dist. LEXIS 147252 at *5-6, quoting *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."); *Lipuma*, 406 F. Supp. 2d at 1324 (citation omitted) ("'Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements—especially in complex class action cases—should be done.'"). Further, the Settlement was not achieved so early in litigation to prevent Class Counsel from having sufficient information to engage in arms-length negotiations.

26. Here, the record was sufficiently developed to enable Class Counsel to make a reasoned and informed judgment regarding the Settlement. Further, the Settlement here was informed by expert analysis of the Class Microwaves, and by numerous, ongoing discussions with the mediator regarding each party's factual and legal theories.

### The Probability of the Plaintiffs' Success on The Merits

27. "The likelihood of success on the merits is weighed against the amount and form or relief contained in the settlement." *Lipuma*, 406 F. Supp. 2d at 1319. Where success at trial is uncertain, this factor weights in favor of approving the settlement. *Newman v. Sun Capital, Inc.*, No. 09-cv-445, 2012 WL 3715150, at *11 (M.D. Fla. Aug. 28, 2012). As addressed in the Parties'

---

the United States District Court for the District of Massachusetts (*Macone v. Sharp Electronics Corporation*, No. 1:19-cv-12021-WGY, D. Mass) ("Massachusetts Action") on September 25, 2019. Each of these actions involved claims that the Class Microwaves contain a defect that causes arcing, which may make the Class Microwaves prone to premature failure.

briefing, and at the Final Approval Hearing, while Plaintiffs were largely successful in defeating Sharp's Motion to Dismiss in the California action, Sharp asserted numerous additional defenses such as lack of standing, expiration of statute of limitations, disclaimer or limitation of warranties, lack of privity, comparative fault, and failure to mitigate. (California Action, at ECF No. 56, at 34-40). Further, Plaintiffs were facing similar motions to dismiss in the other actions, not to mention battles at class certification and summary judgment. If the Parties had not negotiated the Settlement resolving the claims of all five cases, Sharp would have pursued motions to dismiss in all of the other actions. Further, Sharp planned to argue various defenses as to the existence and/or cause of the alleged defect, which included a myriad of individual issues that would make class certification more challenging. Given the countless risks attending ongoing litigation, as well as the likelihood of significant delay and expense of ongoing litigation, the Settlement represents a fair compromise.

### The Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair.

28. "The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief. In considering the question of a possible recovery, the focus is on the possible recovery at trial." *Saccoccio*, 297 F.R.D. at 693 (citation and internal quotation marks omitted). However, "[m]onetary relief is difficult to quantify." *Lipuma*, 406 F. Supp. 2d at 1322. Thus, in evaluating a class settlement, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id*. at 1323. When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*. Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their

actual losses. *See Behrens*, 118 F.R.D. at 542 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."). "[T]he existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

29. As described in detail in the Settlement Agreement, and above, the relief secured for the Settlement Class provides the Class with the precise relief the litigation was brought to obtain: the right to file claims to address the defect in question – either via a replacement Class Microwave or receipt of cash or a voucher, plus reimbursement of labor and/or costs in connection with Documented Arcing Claims. Further, Settlement Class Members who elect either the cash payment or voucher option may also seek reimbursement for consequential damages of up to $200, for costs incurred to repair or cover the opening in a Settlement Class Member's kitchen cabinetry in which their Microwave was installed.

30. According to Plaintiffs' expert, the value of the Settlement is approximately $103,049,520.00 to $113,884,064.00 (s*ee* ECF No. at Exhibit 2, Expert Report from Frank Bernatowicz), and the Settlement clearly meets the critical test of gauging its fairness and reasonableness because it provides significant, concrete relief to Settlement Class Members and directly remedies the injury alleged.

31. Indeed, given the risks associated with continued litigation, the range of recovery is zero through varying levels of monetary and injunctive relief.

### The Substance and Amount of Opposition to the Settlement

32. Objections to class action settlements are an important part of the Rule 23 process. In determining whether a class action settlement is fair, reasonable, and adequate, the Court must consider the reaction of absent class members. *Bennett*, 737 F.2d at 986; *Hall v. Bank of Am.,*

*N.A.*, No. 12-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014). Here, only one purported Settlement Class Member, Steven Helfand, submitted an objection, which he has since withdrawn. Thus, there are no objections to the Settlement. In any event, Mr. Helfand's now-withdrawn objection was legally and factually baseless. Further, to date, only six Settlement Class Members have submitted valid opt-outs. These "low opt-out and objection rates weighs in favor of granting final approval" of the Settlement. *Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *10 (S.D. Fla. Sept. 6, 2019) (citing *Lipuma*, 406 F. Supp. 2d at 1324); *see also Saccoccio*, 297 F.R.D. at 694. Further, no state or federal government officials filed objections, which also weighs in favor of granting final approval.

## SERVICE PAYMENTS

33. As part of the Settlement, Sharp agreed to pay Service Payments, if awarded by the Court, of up to $1,500 to each of the Class Representatives in this Action in recognition of the time and effort they personally invested in this litigation and in exchange for the claims of Class Representatives in this Action being released. Following this Court's entry of the Order Granting Preliminary Approval (ECF No. 46), the Eleventh Circuit decided *Johnson v. NPAS Sols., LLC*, No. 18-12344, 2020 U.S. App. LEXIS 29682, at *17-28 (11th Cir. Sept. 17, 2020). In that case, the Eleventh Circuit found that service awards to class representatives were prohibited. Following entry of the *Johnson* opinion, on October 22, 2020, the *Johnson* plaintiff/appellee filed a Petition for Panel Rehearing or Rehearing En Banc. Following that request, on November 5, 2020, the Eleventh Circuit granted multiple parties' petitions to file amicus briefs in support of the rehearing en banc and, on November 9, 2020, the Eleventh Circuit withheld issuance of the mandate in that case.

34. Because of the Eleventh Circuit's possible rehearing en banc in *Johnson*, on December 7, 2020, in an order granting final approval of a class action settlement in *Harvey v. Hammel Kaplan Co.*, LLC, No. 3:19-cv-640, 2020 U.S. Dist. LEXIS, at *9-10, 22 (M.D. Fla. Dec. 7, 2020), the court directed the defendant to deposit the agreed service awards of $1500.00 in the registry of the court, to be held until the Eleventh Circuit's issuance of a mandate in *Johnson*. *Id.* at 10, citing *Metzler et al. v. Med. Mgmt. Int'l, Inc. et al.*, No. 8:19- CV-2289-T-33CPT, 2020 U.S. Dist. LEXIS 187478, at *7-8 (M.D. Fla. Oct. 9, 2020) (court granted final approval of class action settlement and retained jurisdiction for limited purpose of revisiting service awards if Eleventh Circuit reverses *Johnson*).

35. In light of the opinion in *Johnson,* Class Representatives are presently not moving for Court approval of the Service Payments. However, similar to the rulings in *Harvey* and *Metzler*, this Court will retain jurisdiction for the limited purpose of revisiting the approval of the Service Payments if the Eleventh Circuit holds a hearing en banc in *Johnson* and reverses its decision. If the *Johnson* decision is reversed, in relevant part, Plaintiffs will promptly petition the Court for an order approving payment of the Service Payments to the Class Representatives. Sharp has agreed to pay the Service Payments in the event *Johnson* is reversed and this Court awards the Service Payments.

## CONCLUSION

For the reasons discussed herein:

1. The Court hereby finally approves the Settlement Agreement and the Settlement contemplated thereby, and finds that the terms constitute, in all respects, a fair, adequate and reasonable settlement as to all Settlement Class Members in accordance with Rule 23 of the Federal Rules of Civil Procedure and directs its consummation pursuant to its terms and conditions.

Further, the class definition is sufficiently ascertainable such that an individual can ascertain whether he or she is in the Settlement Class based on objective criteria.

2. The Court hereby finds and concludes that the Settlement Class Notice and procedures set forth in the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order. The Court hereby finds and concludes that the notice provided by Sharp to the appropriate State and federal officials pursuant to 28 U.S.C. § 1715 fully satisfied the requirements of that statute.

3. The Court retains exclusive jurisdiction for one (1) year to consider all further matters arising out of or connected with the Settlement Agreement, including the issue of approval of the Service Payments if the Eleventh Circuit holds a hearing en banc in *Johnson* and reverses its earlier decision.

4. The Court hereby orders that each of those individuals listed in Exhibit J of the Declaration of Tiffaney Janowicz (ECF. No., Ex. J) who requested timely exclusions are excluded from the Settlement Class and will not be bound by the Settlement Agreement, and neither will they be entitled to any of its benefits.

5. Plaintiffs and each and every one of the Settlement Class Members who have not requested exclusion from the Settlement Class, hereby unconditionally, fully, and finally release and forever discharge the Released Parties from the Released Claims. Each and every Settlement Class Member, and any person actually or purportedly acting on behalf of any Settlement Class Member(s), is hereby barred from commencing, instituting, continuing, pursuing, maintaining,

prosecuting, or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral, or other forum, against the Released Parties.

6. The Court hereby finds that the Settlement Class Members have been adequately represented by the Class Representatives and Class Counsel, and that the relief provided is fair, adequate, and reasonable, considering the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief and method of processing claims, and all other relevant factors, and that the Settlement treats Class Members equitably relative to each other.

7. If for any reason the Settlement terminates, then certification of the Settlement Class shall be deemed vacated. In such an event, the certification of the Settlement Class for settlement purposes or any briefing or materials submitted seeking certification of the Settlement Class shall not be considered in connection with any subsequent class certification issues, and the Parties shall return to the status quo ante in the Action, without prejudice to the right of any of the Parties to assert any right or position that could have been asserted if the Settlement had never been reached or proposed to the Court.

8. There are no pending objections to the Settlement. One objection was received from Steven Helfand but was later withdrawn. In any event, Mr. Helfand's objection was legally and factually baseless.

9. Nothing stated in the Settlement Agreement or in this Order shall be deemed an admission or waiver of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this Action, the Related Actions, or in any other action or proceeding of any kind.

10. The Court hereby dismisses the Action, with prejudice, without costs to any party, except as expressly provided for in the Settlement Agreement.

11. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Tampa, Florida, on this 7th day of January, 2021.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE